628 S.E.2d 276

The **SOUTH CAROLINA MUNICIPAL INSURANCE AND RISK FUND, Appellant,**

v.

The **CITY OF MYRTLE BEACH and James E. Daniels, individually and as class representative, Respondents.**

**No. 4088.**

Court of Appeals of South Carolina.

Heard Jan. 10, 2006.
Decided Feb. 27, 2006.
Rehearing Denied April 20, 2006.

J.R. Murphy, Adam J. Neil, and Tony Catone, all of Columbia, for Appellant.

Charles Bernhart Jordan, of Myrtle Beach; Gene McCain Connell, Jr., of Surfside Beach, for Respondents.

GOOLSBY, J.:

In this declaratory judgment action, the South Carolina Municipal Insurance and Risk Fund (SCMIRF) appeals a summary judgment order requiring it to indemnify the City of Myrtle Beach (the City) for refunds of monies collected pursuant to a city ordinance that had been declared unconstitutional. We reverse.

## FACTS

In February 1996, James Daniels filed a class action lawsuit against the City, challenging Myrtle Beach City Code section 21-7(g) and the City's implementation of that section. The ordinance stated the following:

> Any outstanding charges associated with rental or leased properties or accounts which are not covered by the tenant's deposit shall be the responsibility of the property owner.

The effect of the ordinance was that landlords became secondarily liable for their tenants' water bills. In implementing the ordinance, the City would refuse to provide water service to leased property with outstanding water bills. As a result of this refusal, landlords and new tenants could be required to pay water charges incurred by prior tenants.

On December 28, 2001, the master-in-equity for Horry County granted judgment to the class, holding the ordinance and implementing policies violated federal statutory law and

the constitutional guarantees of substantive due process, procedural due process, equal protection, and just compensation. The master further ordered that each member of the class was entitled to a refund of any monies paid for another's water bill.

During the time of some of the allegations in the class action complaint, the City was insured under a general liability insurance policy issued by SCMIRF. The pertinent section of the policy read as follows:

SCMIRF agrees, subject to limitations, terms, and conditions stated in the General Provisions, Section I and Hereunder mentioned:

1. To indemnify the Member and Covered Person(s) for all sums which the Member or Covered Person(s) shall be obligated to pay by reason of the liability imposed upon the covered Person(s) by law for damages on account of ... damage to or destruction of property or the loss of use thereof arising out of any Occurrence.

The policy also listed certain actions as exclusions to coverage, noting in particular that "this coverage under this section does not apply: ... to inverse condemnation, condemnation, temporary taking, permanent taking, or any claim arising out of or in any way connected with the operation of the principles of eminent domain, adverse possession or dedication by adverse use."

On February 25, 2003, SCMIRF filed the present action in the Horry County Court of Common Pleas requesting declarations that this policy did not cover any of the claims or damages asserted by the class against the City and that SCMIRF was not required to provide a defense to the City in the underlying class action. The City answered with a general denial and various affirmative defenses on March 13, 2003. On September 4, 2003, SCMIRF filed a motion for summary judgment. A hearing on the motion took place November 1, 2004. With the request and consent of the parties, the trial court converted the motion into cross-motions for summary judgment. On December 10, 2004, the trial court filed an order denying summary judgment to SCMIRF and granting summary judgment to the City.

The trial court concluded the refunds constituted "damages" under the insuring policy. The trial court also concluded the

wrongful collection of money was "property damage" and the City's action pursuant to its ordinance was an unintended "occurrence." Finally, the trial court concluded the inverse condemnation exclusion did not preclude coverage. This appeal followed.

## LAW/ANALYSIS

We address only SCMIRF's contention that the policy expressly excluded coverage for claims based on a taking. We hold this argument is a sufficient basis on which to reverse the appealed order.

Regarding insurance policies, the supreme court has noted that "rules of construction requires clauses of exclusion to be narrowly interpreted and clauses of inclusion to be broadly construed." [1] "This rule of construction inures to the benefit of the insured." [2] Nevertheless, "[w]hen the contract language is clear and unambiguous, the language alone determines the contract's force, and terms must be construed to give effect to their 'plain, ordinary, and popular meaning.' " [3] "Courts may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of a policy." [4]

Citing this court's decision in *Isle of Palms Pest Control v. Monticello Insurance Co.*,[5] the trial court held that, because inverse condemnation was only one of several grounds upon which the master assessed liability against the City and because the exclusion did not apply to the other grounds for the master's ruling, namely due process and equal protection,

1. *McPherson v. Michigan Mut. Ins. Co.*, 310 S.C. 316, 319, 426 S.E.2d 770–71 (1993).

2. *Id.*

3. *Dorman v. Allstate Ins. Co.*, 332 S.C. 176, 178, 504 S.E.2d 127, 129 (Ct.App.1998) (quoting *Gray v. State Farm Auto Ins. Co.*, 327 S.C. 646, 650, 491 S.E.2d 272, 274 (Ct.App.1997)).

4. *Falkosky v. Allstate Ins. Co.*, 311 S.C. 369, 371, 429 S.E.2d 194, 196 (Ct.App.), *aff'd as modified,* 312 S.C. 210, 439 S.E.2d 836 (1993).

5. 319 S.C. 12, 459 S.E.2d 318 (Ct.App.1994), *aff'd,* 321 S.C. 310, 468 S.E.2d 304 (1996).

the inverse condemnation exclusion did not operate to preclude coverage. We disagree with these holdings.

First, the portion of *Isle of Palms* on which the trial court relied in reaching this conclusion concerned only a duty to defend, not a duty to pay.[6] In contrast, the focus of this appeal is not on SCMIRF's duty to defend but rather on whether the policy it issued to the City required it to cover damages and attorney fees assessed against the City in the underlying suit. Although an insurer may have an initial obligation to provide a defense to a claim because "the underlying complaint creates a possibility of coverage under an insurance policy,"[7] this obligation is distinct from the insurer's responsibility to cover the claim.[8]

Second, we disagree with the conclusion in the appealed order that, because the master also cited the grounds of due process and equal protection to support his finding that Myrtle Beach City Code section 21–7(g) was invalid, the inverse condemnation exclusion did not operate to preclude coverage.

As stated earlier, the policy expressly provided that liability coverage would not apply "to inverse condemnation, condemnation, temporary taking, permanent taking, or any claim

---

6. The section cited by the trial court reads as follows: "While the [third-party] complaint also includes allegations of intentional conduct which would not be covered by the policy, the inclusion of some noncovered claims does not abrogate an insurer's *duty to defend* when a complaint raises claims covered by the policy." *Id.* at 15, 459 S.E.2d at 319 (emphasis added).

7. *Id.*

8. *See Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 186, 236 S.E.2d 818, 820 (1977) (stating that, although the duty to defend and the obligation to·pay a judgment against an insured "are related in the sense that the duty to defend depends on an initial or apparent potential liability to satisfy the judgment, the duty to defend exists regardless of the insurer's ultimate liability to the insured"); *cf. Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887–88 (Minn.1978) ("[A]lthough the liability insurer generally must undertake the defense of its insured based upon the allegations in the third-party complaint, the allegations of negligence in [the third-party] complaint can impose no continuing obligation where coverage has been declared excluded in separate judicial proceedings.").

arising out of or in any way connected with the operation of the principles of eminent domain, adverse possession or dedication by adverse use." In granting judgment to the plaintiffs in the class action and ordering the City to make refunds to the class members, the master concluded that requiring one person to pay another's water bill to obtain service amounted to a "taking of property which violates the United States and the South Carolina Constitutions." Although, as the trial court correctly observed, the master also cited due process and equal protection as reasons to require the City to pay refunds to the plaintiffs in the class action, the heart of the controversy in that lawsuit was the taking by the City of the class members' money without just compensation. As SCMIRF argued in its brief, the violation of the class members' rights to due process and equal protection would not have occurred but for the wrongful exercise by the City of its eminent domain power.[9] Because the claim at issue in this appeal fell within a policy exclusion, SCMIRF should not be required to indemnify the City for its loss.[10]

**REVERSED.**

ANDERSON and SHORT, JJ., concur.

---

**9.** *See Reagan v. Farmers' Loan & Trust Co.,* 154 U.S. 362, 399, 14 S.Ct. 1047, 38 L.Ed. 1014 (1894) ("The equal protection of the laws, which, by the fourteenth amendment, no state can deny to the individual, forbids legislation, in whatever form it may be enacted, by which the property of one individual is, without compensation, wrested from him for the benefit of another, or of the public."); *cf. T.E. Wannamaker, Inc v. City of Orangeburg,* 278 S.C. 637, 639, 300 S.E.2d 729, 730 (1983) (recognizing equal protection and due process as "constitutional requirements" in a condemnation proceeding).

**10.** *Cf. McPherson,* 310 S.C. at 320, 426 S.E.2d at 772 (upholding this court's determination that the policy at issue excluded coverage for the plaintiff's injuries "regardless of the legal theory by which they are claimed") (*aff'g as modified* 306 S.C. 456, 412 S.E.2d 445 (Ct.App. 1991)); *B.L.G. Enters. v. First Fin. Ins. Co.,* 328 S.C. 374, 377, 491 S.E.2d 695, 697 (Ct.App.1997) ("[I]nsurers have no duty to defend the insured where damages are caused by a reason clearly excluded under the policy."), *aff'd,* 334 S.C. 529, 514 S.E.2d 327 (1999).